**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **EDWARD PATTEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 2:06-cv-864-WKW-CSC** |
| | ) |
| **BILL FRANKLIN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Elmore County, Alabama Sheriff Bill Franklin and Elmore County Jail Correctional Officer Sergeant Jamie Church, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

The Plaintiff in this action, Edward Patten, a federal inmate in the custody of the Federal Bureau of Prisons, was incarcerated at the Elmore County Jail beginning August 18, 2006 through August 25, 2006. He filed a Complaint on September 27, 2006 naming Elmore County Sheriff Bill Franklin and Elmore County Jail Corrections Officer Sergeant Jamie Church as Defendants. The following day, on September 28, 2006, the Magistrate Judge to whom this action was referred issued an Order directing the Defendants to file a written report and answer in response to the Plaintiff's allegations within forty (40) days of the date of that Order. Order, September 28, 2006 (Doc. #4).

## PLAINTIFF'S ALLEGATIONS

The Plaintiff complains that his constitutional rights were violated by the Defendants when Plaintiff's request to be placed in protective custody was refused.

## DEFENDANTS' RESPONSE TO THE PLAINTIFF'S ALLEGATIONS

### A.     Facts.

Upon his arrival at the Elmore County Jail, the Plaintiff was housed in Pod 5, Cell 6. Ex. A, Jail Property Receipt. Thereafter, he requested that Sergeant Church move him to a "safer location." See Complaint, Attached Copy #(1). Although the Plaintiff claims Sergeant Church refused his request for a transfer, the Plaintiff was indeed moved out of Pod 5. Id.; Ex. B, Affidavit of Sergeant Jamie Church (hereafter "Church aff."), ¶¶ 6, 7. The "serious incident" in which the Plaintiff was allegedly "jumped, beaten, and sexually assaulted" occurred *after* he was moved from Pod 5 to Pod 8. See Complaint, Attached Copy #(1) ("[H]e moved me to Pod 8. After (2) or (3) [sic] days in Pod 8 on August 22, 2006 I was involved in a serious incident with some county inmates. I was jumped, beaten, and sexually assaulted."). To be clear, the Plaintiff felt threatened in Pod 5 and asked to be moved to a "safer location"; the Plaintiff's request was granted by Sergeant Church and the Plaintiff was moved to a different pod (Pod 8); after two or three days in Pod 8, the Plaintiff was allegedly assaulted.

The Plaintiff alleges that "[a]fter (2) or (3) [sic] days in Pod 8 on August 22, 2006[1] I was involved in a serious incident with some county inmates. I was jumped, beaten, and sexually assaulted[,]….I tried to get Sgt. Church…to get me a nurse (medical help). Nothing was done." Complaint, Attached Copy #(1). The Plaintiff insists that he "eventually got Renee Ross

---

[1] In his Complaint, the Plaintiff states unequivocally that he was assaulted in Pod 8 on August 22, 2006. See Complaint, p. 2 (Part IV – The Date Upon Which Said Violation Occurred) & Attached Copy #(1). However, at Elmore Community Hospital he told health care personnel that the alleged attack occurred on August 18, 2006. See Ex. C, Elmore Community Hospital records.

(Federal Defenders) to get [him] some help." Id. He does not describe the nature of the help that Renee Ross obtained for him other than to say that she "came to Elmore County jail to confirm this. She saw the blood and got evidence from me about the incidents that occurred there." Id. at Attached Copy #(2). The Plaintiff has not submitted any "evidence" collected by Renee Ross.

Despite the Plaintiff's claim that "[n]othing was done" in response to his request to see a nurse after the alleged attack, medical records indicate that he was evaluated by a physician in Elmore Community Hospital's emergency department on August 24, 2006. Ex. C, Elmore Community Hospital records. The Plaintiff's abdominal x-rays were negative and the "Clinical Impression" was "minimal gum bleeding/gingivitis." Id. Additionally, on August 19, 2006, the day after the Plaintiff arrived at the Elmore County Jail, he was seen by the jail nurse at least three (3) times. Ex. D, Elmore County Jail Progress/Nurse's Notes (August 19, 2006). On August 21, 2006, he submitted a Request Form asking to see the nurse. Ex. E, Inmate Request Form, (August 21, 2006). The Plaintiff was evaluated by the jail nurse the following day and the nurse indicated "No s/s of distress @ [sic] this time."[2] Id. at "Reply" section (dated August 22, 2006). Moreover, his "Medication Administration Record" indicates that he received the listed medication each day he was incarcerated at the Elmore County Jail. Ex. F, Medication Administration Record. To summarize, the Plaintiff was evaluated by a health care professional no less than five (5) times over the course of the seven (7) days he was at the Elmore County Jail and always received his prescribed medication.

The Elmore County, Alabama Sheriff's Department operates the Elmore County Jail pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. All state and federal prisoners or detainees being held or housed in the

---

[2] Apparently, the notation "s/s" stands for "signs and symptoms." See "Medical Shorthand," Western Oregon Univ., College of Education, at http://www.wou.edu/education/sped/wrocc/ToddMedical/Mecial%20Shorthand.htm accessed November 1, 2006.

Elmore County Jail will be subject to the rules and regulations of the Elmore County Jail.  See Exhibit G, Affidavit of Elmore County Sheriff Bill Franklin (hereafter "Franklin aff."), ¶ 4.

It is the policy of the Elmore County Sheriff's Department that inmates incarcerated in the Elmore County Jail be assigned cells in a manner which will ensure the safety and security of the inmates and jail staff and will ensure the orderly operation of the Elmore County Jail.  The assignment of an inmate to a particular cell or any change in cell assignment is the responsibility of jail officials only.  The primary objective of the jail staff with regard to cell assignment will be inmate safety.  When it is apparent or seems likely that two inmates represent a potential threat to each other or will not be able to exist together in the same living area without potential conflict, those inmates shall be separated.  Id. at ¶ 7.

It is the policy of the Elmore County Sheriff's Department to classify inmates in specific custody levels in order to provide for their welfare and facility security.  An inmate's classification status shall be reviewed regularly and changed as necessary.  Inmates classified as general population are those who are capable of functioning in larger groups and are not considered security risks.  Segregation inmates include those classified as administrative segregation, protective custody, and special needs.  Protective custody inmates are housed in segregation only when there is documentation that protective custody is warranted and no alternative exists.  Id. at ¶ 8.

It is the policy of the Elmore County Sheriff's Department that the Elmore County Jail be operated in a manner which provides for community safety, facility security, and the welfare of the jail staff and inmates.  Id. at ¶ 5.  It is the policy of the Elmore County Sheriff's Department that no person be incarcerated in a situation within the Elmore County Jail where his life or health may be threatened by another inmate when, by making the situation known to members of

the jail staff, he can be incarcerated elsewhere.  All persons being booked into the Elmore

County Jail will be given the opportunity to complete an "enemies list."  The booking officer

will give the arrestee or detainee an opportunity to make known in writing any person within the

jail whom he fears or has reason to believe is a threat to him in any way.  If the inmate states that

there is an inmate or inmates who would do him harm, jail personnel will list the inmate or

inmates on the enemies form stating the reason the new inmate feels he is in danger.  If the new

inmate states that he has no knowledge of any other inmate who would cause him harm, the

booking officer will note this fact on the booking sheet by checking the appropriate space.  Upon

completion of the enemies list, the inmate will be asked to sign the form and it will then be

placed in the inmate's jail file.  Id. at ¶ 6.

It is the policy of the Elmore County Sheriff's Department that Sheriff's Department

personnel employed at the Elmore County Jail be aware of and protect inmate rights, both civil

and legal.  These rights include: (a) freedom from discrimination based on race, religion, national

origin, sex, handicap or political beliefs; (b) equal access to programs and work assignments; (c)

protection from personal abuse, corporal punishment, personal injury, disease, property damage

and harassment; and, (d) freedom from reprisals or penalties as a result of seeking administrative

or judicial redress.    All employees having direct contact with inmates must treat them

respectfully and courteously.  All inmates shall have equal access to programs, activities and

work assignments.  Id. at ¶ 9.

It is the policy of the Elmore County Sheriff's Department that members of the Elmore

County Jail staff conduct themselves in a manner so as to ensure that inmates are dealt with in a

constitutional, honest, fair and impartial manner.  Id. at ¶ 10.  It is the policy of the Elmore

County Sheriff's Department that members of the jail staff receive and answer any written

grievances or requests made by inmates to the Sheriff, Jail Administrator or jail personnel.  Id. at ¶ 13.  Inmates housed in the Elmore County Jail will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.  Forms on which grievances and medical requests may be related to the jail staff are readily available in the jail.  Inmates are furnished these forms any time they request one.  Id. at ¶ 11.  Inmates are made aware of the grievance procedure and the medical request procedure by receipt of an inmate handbook at the time they are booked.  This handbook describes not only the grievance process, but the general operation and rules of the jail.  Id. at ¶ 12.

Jail personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.  An exception exists for requests of an emergency nature, which may be made orally.  Inmates are generally encouraged to resolve grievances between themselves and members of the jail staff informally.  If this is not possible, the inmate may complete a request form, stating his grievance.  The original copy of an inmate's grievance and/or request form, containing the response of a jail official(s), is placed in an inmate's jail file.  Id. at ¶ 11.

It is the policy of the Elmore County Sheriff's Department that all inmates confined in the Elmore County Jail be entitled to a level of health care comparable to that available to citizens in the surrounding community in order to ensure the inmate's physical and emotional well-being.  All medical care rendered to inmates in the Elmore County Jail is delivered under the direction of a licensed physician.  No health care personnel or jail officer, or other employee of the Sheriff's Department, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services.  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist, or qualified

psychologist, respectively.  Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  Id. at ¶ 14.

It is the policy of the Elmore County Sheriff's Department that inmates incarcerated in the Elmore County Jail may request health care services at any time.  Inmates may either make a verbal request to any member of the jail staff for emergency attention, or make a written request for any non-emergency situation.  Requests for medical treatment are accepted by members of the jail staff at all times.  Id. at ¶ 15.  It is the policy of the Elmore County Sheriff's Department to transport an inmate to appropriate medical facilities for non-emergency care in a manner which is safe and secure and does not endanger the inmate's health or medical condition.  Id. at ¶ 16.  It is the policy of the Elmore County Sheriff's Department to work closely with the private health care providers of inmates incarcerated in the Elmore County Jail where possible.  Id. at ¶ 17.  It is the policy of the Elmore County Sheriff's Department that persons incarcerated in the Elmore County Jail be entitled to safe dispensation and administration of prescription and nonprescription medication.  All medication which is prescribed for an inmate by his health care provider during the term of the inmate's incarceration is obtained by the Sheriff's Department and distributed to the inmate according to the doctor's directions.  Id. at ¶ 18.

The Defendants deny that they – individually or collectively – violated, or caused anyone to violate, any right to which the Plaintiff was entitled.  Id. at ¶ 21; Ex. B, Church aff., ¶ 10.  Similarly, the Defendants have not authorized or allowed anyone to act contrary to the Elmore County Jail Manual of Policies and Procedures or to violate the rights of any Elmore County Jail inmate, nor are they aware of any such violation.  Ex. G, Franklin aff., ¶ 22; Ex. B, Church aff., ¶ 11.

I.    **LAW**

A.    **All claims against Defendants in their official capacities are due to be dismissed.**

1.    **All claims against Defendants in their official capacities must fail based on Eleventh Amendment immunity.**

Plaintiff's claims against Sheriff Franklin and Sergeant Church in their official capacities are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

2.    **All claims against Defendants in their official capacities must fail because Defendants are not "persons" under 42 U.S.C. § 1983.**

The official capacity claims against Sheriff Franklin and Sergeant Church are due to be dismissed because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that a state official, in his official capacity, is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Franklin and/or Sergeant Church in their official capacities should be dismissed because they are not "persons" under § 1983; as a result, all

claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d 1521, 1525 n.3.

### B.    The Prison Litigation Reform Act bars the Plaintiff's Complaint.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting *any* action concerning prison conditions.  Woodford v. Ngo, 126 S. Ct. 2378, 2383 (2006) citing Porter v. Nussle, 534 U.S. 516, 524 (2002); see also 42 U.S.C. § 1997e(a); Porter, 534 U.S. at 532 ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"); Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (recognizing same); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (recognizing that § 1997e(a) mandates an inmate's exhaustion of all 'available' administrative remedies).

The PLRA's exhaustion requirement was intended by Congress to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter, 534 U.S. at 525.  One of the benefits of the recently enunciated "proper exhaustion" interpretation is that it "improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court."  Woodford, 126 S. Ct. at 2388.  The Supreme Court hypothesized that reasons for dodging the exhaustion requirement are varied, but observed that

> [o]ne can conceive of an inmate's seeking to avoid creating an administrative record with someone that he or she views as a hostile factfinder, filing a lawsuit primarily as a method of making some corrections official's life difficult, or perhaps even speculating that a suit will mean a welcome-if temporary-respite from his or her cell.

Id. at 2385 n.1.  There can be little doubt that consistently enforcing the PLRA's complete exhaustion requirement "gives prisoners an effective incentive to make full use of the prison

grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 2387-88.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Elmore County is a state executive officer, as is his alter ego, Sergeant Church; therefore, these Defendants are entitled to sovereign immunity. See Lancaster, 116 F.3d at 1429. Because of this immunity from suit, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

A review of the Plaintiff's Inmate File reveals one completed Inmate Request Form in which the Plaintiff asked to see the jail nurse. See Ex. E, Inmate Request Form (August 21, 2006). His Inmate File contains *no* indication that he availed himself of the Elmore County Jail grievance process. Ex. H, Plaintiff's Inmate File. As a result of Plaintiff's failure to exhaust all available remedies, he is barred from bringing this action under § 1997e(a). See Alexander, 159 F.3d at 1326-27 (affirming dismissal of prison action due to failure to exhaust administrative remedies). Under the authority of 42 U.S.C. § 1997e(c)(2), this Court also has the power to dismiss Plaintiff's claim(s) without first requiring the exhaustion of administrative remedies. ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2).). See Boxer X v. Harris, 437 F.3d 1107, 1110 n.2 (11th Cir. 2006) ("District courts should first consider whether the PLRA bars a prisoner Plaintiff's

suit prior to rendering a decision on the merits. This is a prudential consideration, because the PLRA contemplates a merits dismissal prior to a finding of exhaustion.").

    **C.**    **Plaintiff's claims against Sheriff Franklin must fail because Sheriff Franklin had no personal involvement in the alleged constitutional violations.**

In addition to the pleading defects already discussed in this Special Report, the Plaintiff also fails to allege sufficient personal involvement by Sheriff Franklin to support his claims against this Defendant. The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a Defendant and the constitutional deprivation. Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed by state or local law which results in constitutional injury. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Franklin was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that this Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no specific facts tending to show that Sheriff Franklin personally participated in the acts or omissions alleged by the Plaintiff, nor does the Plaintiff allege *specifically* how this Defendant violated his constitutional rights. In fact, Sheriff Franklin is not mentioned *anywhere* in the Plaintiff's allegations. Given the absence of allegations concerning Sheriff Franklin, the Plaintiff essentially attempts to hold Sheriff Franklin liable pursuant to a theory of *respondeat superior* liability, which he cannot do. See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). As such, all of Plaintiff's claims against Sheriff Franklin are due to be dismissed.

    **D.**    **Alternatively, the Defendants are entitled to summary judgment based on qualified immunity because their conduct violated no constitutional right and**

**no aspect of their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants Franklin and Church were acting within their discretionary authority as Sheriff of Elmore County and Elmore County Jail Correctional Officer, respectively, during all times relevant to Plaintiff's Complaint because all of their actions were taken in furtherance of their job duties. See, e.g., Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the Plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that this Defendant had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided Sheriff Franklin and Sergeant Church with fair warning that their conduct was unlawful.  The Plaintiff may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 quoting Lassiter v. Alabama A&M University, Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (overruled on other grounds).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided Sheriff Franklin and Sergeant Church with fair warning that their conduct was unlawful.  Therefore, Defendants Franklin and Church are entitled to qualified immunity.

1.    **Failure to protect claim.**

The Plaintiff's attempt to state a claim against the Defendants for failure to protect him from harm fails and is due to be dismissed.  Any attempt to state a claim must fail because the Plaintiff's request to be moved to a "safer location" was granted by Sergeant Church and the Plaintiff was transferred to another area of the jail; the Plaintiff was allegedly attacked *after* he received his requested transfer.  Furthermore, there is no indication that Sheriff Franklin or Sergeant Church had even the slightest knowledge of a risk of harm to the Plaintiff, much less a substantial risk of serious harm.  For these and other reasons, the Defendants are entitled to summary judgment on the Plaintiff's claim.

In order for a jail official to incur Eighth Amendment liability, the jail official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994). That is, "to survive summary judgment on his section 1983, Eighth Amendment claim, [the Plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

The United States Supreme Court has been clear that "[i]t is not…every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 511 U.S. at 834.  The Eleventh Circuit Court of Appeals, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety'."  Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1321 (11th Cir. 2005) quoting Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir.

1990).  It is only when a jail official's knowledge of the risk of harm to a particular inmate rises to "'a strong likelihood, rather than a mere possibility' [that] a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) quoting Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983)).  "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

Virtually none of the many decisions in this circuit concerning correctional officials' alleged failure to protect an inmate are applicable to the case at bar because, unlike the plaintiffs in those cases, the instant Plaintiff *was* removed from the part of the jail where he perceived danger.  Upon his arrival at the Elmore County Jail, the Plaintiff was housed in Pod 5, Cell 6. Ex. A, Jail Property Receipt.  Thereafter, he requested that Sergeant Church move him to a "safer location." See Complaint, Attached Copy #(1).  Contrary to the Plaintiff's assertion, Sergeant Church did not tell the Plaintiff that he had to become a "snitch" or help him find a "shank" to be removed from Pod 5.  Ex. B, Church aff., ¶ 6.  Although the Plaintiff claims Sergeant Church refused his request for a transfer, the Plaintiff was indeed moved out of Pod 5.  See Complaint, Attached Copy #(1); Ex. B, Church aff., ¶¶ 6, 7.  The "serious incident" in which the Plaintiff was allegedly "jumped, beaten, and sexually assaulted" occurred *after* he was moved from Pod 5 to Pod 8.  See Complaint, Attached Copy #(1) ("[H]e moved me to Pod 8.  After (2) or (3) [sic] days in Pod 8 on August 22, 2006 I was involved in a serious incident with some county inmates. I was jumped, beaten, and sexually assaulted.").  To be clear, the Plaintiff felt threatened in Pod 5 and asked to be moved to a "safer location"; the Plaintiff's request was granted by Sergeant Church and the Plaintiff was moved to a different pod (Pod 8); after two or three days in Pod 8 –

during which the Plaintiff never indicated to jail officials that he was at risk of harm of any sort, the Plaintiff was allegedly assaulted.

Elmore County Jail policy provides that no person be incarcerated in a situation within the Elmore County Jail where his life or health may be threatened by another inmate when, by making the situation known to members of the jail staff, he can be incarcerated elsewhere. Ex. G, Franklin aff., ¶ 6. The primary objective of the jail staff with regard to cell assignment will be inmate safety. When it is apparent or seems likely that two inmates represent a potential threat to each other or will not be able to exist together in the same living area without potential conflict, those inmates shall be separated. Id. at ¶ 7.

The Plaintiff has not alleged, much less established, the elements necessary for him to survive summary judgment on his failure-to-protect claim: that is, "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale, 50 F.3d at 1582. For argument's sake, the Plaintiff likely comes closest to demonstrating that he was exposed to a substantial risk of serious harm *in Pod 5* – the pod out of which he was moved.[3] The Plaintiff does not, however, even mention a risk to which he was exposed in Pod 8 – the pod to which he was transferred after seeking a "safer location." Unlike his period of confinement in Pod 5, there is no indication the Plaintiff sought to be transferred out of Pod 8 or otherwise informed Defendants Franklin or Church that he was subject to a substantial risk of

---

[3] In reality, the Plaintiff's allegations are not nearly sufficient to demonstrate that he was exposed to substantial risk of harm even in Pod 5. See Murphy v. Turpin, 159 Fed. Appx. 945, 948 (11th Cir. 2005); Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Even if Sergeant Church had refused to move the Plaintiff out of Pod 5 and the Plaintiff had subsequently been attacked while in Pod 5, it is unlikely that such conduct by Sergeant Church would constitute a violation of the Plaintiff's constitutional rights. See Brown, 894 F.2d at 1537 (jailer was not deliberately indifferent where inmate informed jailer of "'racial problem' in his cell'," the jailer "indicated that he was not going to do anything about the problem right away," and inmate was later assaulted); see also Murphy, 159 Fed. Appx. at 948 (affirming dismissal of inmate's failure-to-protect claim for failure to state a claim where inmate alleged that officials were aware of his requests for protection from his cellmate, but attack on inmate was perpetrated by cellmate's friend).

16

serious harm.[4]  See Ex. G, Franklin aff., ¶ 19; Ex. B, Church aff., ¶ 8; Brown, 894 F.2d at 1537 quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) ("Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency', thereby rising to the level of a constitutional tort."). The one time the Plaintiff asked to be removed from a particular pod, Sergeant Church made sure the Plaintiff was moved to a different pod.  Ex. B, Church aff., ¶¶ 5, 7.  Defendants Franklin and Church had no independent knowledge of a substantial risk of serious harm to the Plaintiff during his confinement in Pod 8.  In other words, Sheriff Franklin and Sergeant Church had no awareness of a substantial risk of serious harm to the Plaintiff while he was housed in Pod 8 and the Plaintiff has suggested no such awareness.

Since the Plaintiff has failed to demonstrate that he was exposed to a substantial risk of serious harm while in Pod 8, it is impossible for the Defendants to have been deliberately indifferent to such a risk.   In fact, Sergeant Church exhibited the antithesis of deliberate indifference by removing the Plaintiff from the risk of harm he allegedly faced in Pod 5. Furthermore, the Plaintiff was transported to the Elmore Community Hospital for medical attention after the alleged attack and then placed in a cell "up front" at the jail instead of being returned to the general population.  See Ex. C, Elmore Community Hospital records; Complaint, Attached Copy #(2).  It is similarly impossible for the Plaintiff to establish the third necessary element – causation – when he has not alleged, and cannot establish, the prior two elements.  As a result, the Plaintiff's attempt to state a claim against Sheriff Franklin and Sergeant Church must fail and a summary judgment should be entered in their favor.

---

[4] As mentioned below, the Plaintiff was seen by the jail nurse on August 22, 2006 – the day he was allegedly attacked.  See Ex. E, Inmate Request Form (Request is dated August 21, 2006; Nurse's notes are dated August 22, 2006).  If the Plaintiff felt threatened by an inmate(s) in Pod 8, he could have easily disclosed this fear to the nurse during her evaluation of him on August 22, 2006; however, there is no suggestion that he made any such statement to the jail nurse.

2.     **Medical claim.**

To the extent the Plaintiff attempts to state a claim for violation of his rights due to Defendants' denial of medical care, such attempt must fail.  The Plaintiff fails to satisfy the requirements to state a claim for deliberate indifference to a serious medical need; as a result, his attempt to state a claim is due to be dismissed.

In order to prevail under 42 U.S.C. § 1983 on a medical claim, the Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical need.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.

> To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  First, a plaintiff must set forth evidence of an objectively serious medical need.  Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994).[5] Regardless of whether it is diagnosed by a physician or is plainly obvious, to qualify as "serious" "the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm''."  Farrow, 320 F.3d at 1243 quoting Taylor, 221 F.3d at 1258 (alteration in original) (quoting Farmer, 511 U.S. at 834).

---

[5] The Farrow court observed that "[i]n Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners."  Farrow, 320 F.3d at 1243 n.12 citing Hope, 122 S. Ct. at 2515 n.9.

Once a plaintiff establishes that his medical need was "serious," he must then "show the required subjective intent to punish" by "demonstrat[ing] that the public official acted with an attitude of 'deliberate indifference'" toward that serious medical need. Taylor, 221 F.3d at 1258 quoting Estelle, 429 U.S. at 105. To show that a public official acted with an attitude of deliberate indifference, a plaintiff must prove "two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and…draw[ing of] the inference'." Taylor, 221 F.3d at 1258 quoting Farmer, 511 U.S. at 837. "Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Id.

Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985) is especially instructive in light of Plaintiff's allegations in the instant action. Hamm sought to recover against the county and sheriff for allegedly unconstitutional conditions of his confinement, including a claim that he received inadequate medical care. The opinion noted that the jail's "visiting psychiatrist continued prescribed medications similar to that Hamm had taken prior to his incarceration." Hamm, 774 F.2d at 1570. The court disclosed persuasive reasons for its ultimate holding as to Hamm's claim of inadequate medical care, stating:

> [t]he only evidence concerning the rash was Hamm's own testimony. The Sheriff, on the other hand, presented medical records which showed that Hamm made numerous visits to the jail's infirmary where he was usually treated by the registered nurse on duty there. The records indicate that a physician occasionally examined Hamm as well. The jail's medical staff entertained a wide variety of complaints from Hamm and prescribed several types of medication for him. The record also shows that a psychiatrist examined Hamm at the jail and prescribed medication for him. This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.

Id. at 1575.

That same year, the court reviewed a district court's judgment regarding another plaintiff's claim "that the officers violated his rights by failing to give him the icepacks and aspirin prescribed by the doctor for pain upon his return to the jail." In the context of those allegations, the court reiterated that "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed'." Aldridge v. Montgomery, 753 F.2d 970, 973 (11th Cir. 1985) quoting Estelle, 429 U.S. at 105. The court has additionally recognized that "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) quoting Estelle, 429 U.S. at 107.

The instant Plaintiff alleges that "[a]fter (2) or (3) [sic] days in Pod 8 on August 22, 2006[6] I was involved in a serious incident with some county inmates. I was jumped, beaten, and sexually assaulted[,]….I tried to get Sgt. Church…to get me a nurse (medical help). Nothing was done." Complaint, Attached Copy #(1). The Plaintiff insists that he "eventually got Renee Ross (Federal Defenders) to get [him] some help." Id. He does not describe the nature of the help that Renee Ross obtained for him other than to say that she "came to Elmore County jail to confirm this. She saw the blood and got evidence from me about the incidents that occurred there." Id. at Attached Copy #(2). The Plaintiff has not submitted any "evidence" collected by Renee Ross or any statements by her.

---

[6] In his Complaint, the Plaintiff states unequivocally that he was assaulted in Pod 8 on August 22, 2006. See Complaint, p. 2 (Part IV – The Date Upon Which Said Violation Occurred) & Attached Copy #(1). However, at Elmore Community Hospital he told health care personnel that the alleged attack occurred on August 18, 2006. See Ex. C, Elmore Community Hospital records.

Despite the Plaintiff's claim that "[n]othing was done" in response to his request to see a nurse after the alleged attack, medical records indicate that he was evaluated by a physician in Elmore Community Hospital's emergency department on August 24, 2006.  Ex. C, Elmore Community Hospital records.  The Plaintiff's abdominal x-rays were negative and the "Clinical Impression" was "minimal gum bleeding/gingivitis."  Id.  Additionally, on August 19, 2006, the day after the Plaintiff arrived at the Elmore County Jail, he was seen by the jail nurse at least three (3) times.  Ex. D, Elmore County Jail Progress/Nurse's Notes (August 19, 2006).  On August 21, 2006, he submitted a Request Form asking to see the nurse.  Ex. E, Inmate Request Form (August 21, 2006).  The Plaintiff was evaluated by the jail nurse the following day and the nurse indicated "No s/s of distress @ [sic] this time."[7]  Id. at "Reply" section (dated August 22, 2006).  Moreover, his "Medication Administration Record" indicates that he received the listed medication each day he was incarcerated at the Elmore County Jail.  Ex. F, Medication Administration Record.  To summarize, the Plaintiff was evaluated by a health care professional no less than five (5) times over the course of the seven (7) days he was at the Elmore County Jail and always received his prescribed medication.

The Plaintiff's attempt to state a claim for deliberate indifference to a serious medical need, to the extent he makes any such attempt, fails for two reasons.  First, the Plaintiff has not, and cannot, show that he had a "serious medical need."  Second, even if he could make such a showing, he has not, and cannot, demonstrate that the Defendants were deliberately indifferent to that need.

As mentioned above, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[7] Apparently, the notation "s/s" stands for "signs and symptoms."  See "Medical Shorthand," Western Oregon Univ., College of Education, at http://www.wou.edu/education/sped/wrocc/ToddMedical/Mecial%20Shorthand.htm accessed November 1, 2006.

recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187. It is noteworthy that the Plaintiff does not identify a purported medical need. Although the Plaintiff was transported to Elmore Community Hospital for evaluation, the results of that evaluation did not evidence an illness or condition "diagnosed by a physician as mandating treatment." In fact, the only instructions to the Plaintiff upon his discharge from the emergency department were: "Milk of magnesia or mineral oil as needed for constipation." Ex. C, Elmore County Hospital records, Discharge Instructions. There is no indication that he was prescribed medication of any sort by the emergency department physician. The health care professional responsible for the Plaintiff's discharge could have placed a check mark next to one or more of the following statements, but did not do so: "Contact your physician tomorrow for an appointment for follow-up in _____ days"; "If no improvement in ____ days, contact your physician for follow-up"; "Continue with present medication"; "Contact your physician or return to the Emergency Department if symptoms worsen or no relief prior to follow-up appointment"; "Since you have no local physician, you have been referred to Dr. _____, phone number _____"; "Take medications as directed." Id. This conscious decision by the health care professional responsible for the Plaintiff's discharge strongly suggests the absence of a "serious medical need." Therefore, it is unlikely the Plaintiff has satisfied the first hurdle to stating a deliberate indifference claim.

Even if the Plaintiff's medical need was "serious," he has not, and cannot, show deliberate indifference by either of the Defendants to his serious medical need. As noted, Sheriff Franklin was not even aware of the Plaintiff's desire to see the jail nurse. Ex. G, Franklin aff., ¶ 20. A jail official cannot be deliberately indifferent to a medical need of which he is not aware. See Farrow, 320 F.3d at 1245 quoting Farmer, 511 U.S. at 837 ("a prison official cannot be

found deliberately indifferent under the Eighth Amendment 'unless the official *knows of* and *disregards an excessive risk to inmate health or safety*'") (emphasis in <u>Farrow</u>). Elmore County Jail policy dictates that inmates incarcerated in the Elmore County Jail be allowed to request health care services at any time. Ex. G, Franklin aff., ¶ 15. Furthermore, no health care personnel or jail officer, or other employee of the Sheriff's Department, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services. <u>Id.</u> at ¶ 14.

Sergeant Church was not deliberately indifferent to the Plaintiff's alleged medical need because the evidence clearly demonstrates that the Plaintiff received medical care following the alleged assault. <u>See</u> Ex. C, Elmore Community Hospital records; Ex. B, Church aff., ¶¶ 9, 10. The Plaintiff's medical records reveal that he was evaluated by a physician at Elmore Community Hospital following the alleged fracas in Pod 8.[8] <u>See</u> Ex. C, Elmore Community Hospital records. Of course, this fact is not apparent on the face of the Complaint because the Plaintiff fails to mention his evaluation at Elmore Community Hospital or the *four* other occasions when he was seen by the jail nurse between August 18, 2006 and August 22, 2006. <u>See</u>, <u>generally</u>, Complaint; Ex. C, Elmore Community Hospital records; Ex. D, Elmore County Jail Progress/Nurse's Notes; Ex. E, Inmate Request Form, August 21, 2006.

Clearly, the Plaintiff received nearly "round-the-clock" medical care at the Elmore County Jail. In light of that fact, it is almost impossible to state a claim for deliberate indifference to a serious medical need. Indeed, the Plaintiff has *not* stated a claim against the

---

[8] While it is true that a jail official who delays medical care can be said to have acted with deliberate indifference despite the ultimate provision of care, no such allegation is advanced by the Plaintiff here nor is such allegation capable of inference since the Plaintiff does not state when he requested to see the nurse following the alleged attack. <u>See</u> <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999). Assuming, *arguendo*, the Plaintiff requested to see the jail nurse immediately after the alleged attack and did not promptly see the jail nurse, such hypothetical delay does not necessarily constitute deliberate indifference. <u>See</u> <u>Farrow</u>, 320 F.3d at 1247 <u>quoting</u> <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) ("Whether this delay in treatment was tolerable 'depends on the nature of the medical need and the reason for the delay'."). Moreover, a delay in treatment cannot be characterized as deliberately indifferent where the medical need was not "serious."

Defendants for deliberate indifference to a serious medical need and the allegations are due to be dismissed. To the extent he has stated such a claim, Defendants Franklin and Church are entitled to qualified immunity to the Plaintiff's allegations.

### E.     Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a Plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151 quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[9] "A reviewing court need not 'swallow Plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited'." Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### MOTION FOR SUMMARY JUDGMENT

Defendants Bill Franklin and Jamie Church respectfully request this honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

---

[9] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

The Defendants in this action, Elmore County, Alabama Sheriff Bill Franklin and Sergeant Jamie Church, deny each and every allegation made by the Plaintiff, Edward Patten, in his Complaint.  These Defendants neither acted, nor caused anyone else to act, in any manner so as to deprive the Plaintiff of any right to which he was entitled.

**RESPECTFULLY SUBMITTED,** this the 7th day of November, 2006.

> **s/C. Richard Hill, Jr.**
> **C. RICHARD HILL, JR. (HIL045)**
> **DANIEL D. FORDHAM (FOR055)**
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of November, 2006, I electronically filed the Defendants' Special Report with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Edward Patten
Montgomery City Jail
Post Office Box 159
Montgomery, Alabama 36101-0159

> **s/C. Richard Hill, Jr.**
> **OF COUNSEL**

# EXHIBIT A

I HAVE BEEN ISSUED THE FOLLOWING ITEMS AND UNDERSTAND THAT I AM
RESPONSIBLE FOR THE ITEMS.  THE DEFACING, DESTRUCTION, ALTERATION OR
LOSS OF ANY ITEMS WILL REQUIRE MONATARY RESTITUTION AND MAY RESULT IN
DISCIPLIMARY AND/OR CRIMINAL ACTIONS BEING TAKEN AGAINST ME.  I FURTHER
UNDERSTAND THAT WHILE IN THIS FACILITY I WILL ABIDE BY THE RULES AND
REGULATIONS SET FORTH IN THE INMATE HANDBOOK.

* * *  BOOKING OFFICER WILL CHECK EACH ITEM AND NOTATE AND ITEM  * * *
* * *           ISSUED OUT IN NOT GOOD CONDITION.                 * * *

- ✓ LAUNDRY BAG
- ✓ DRINKING CUP
- ✓ SHEETS  1 (2)
- N/A BLANKET-IF APPLICABLE
- ✓ TOOTHBRUSH
- ✓ TOOTHPASTE
- ✓ SOAP
- ✓ BATH TOWEL
- ✓ FACE TOWEL
- ✓ UNIFORM  1 (2)
- ✓ HANDBOOK
- ✓ MATTRESS (LEFT IN CELL)

INMATE SIGNATURE: Edward Patten

BOOKING OFFICER SIGNATURE: Minardi

* * *  THIS FORM IS TO BE PLACED IN INMATE FILE FOLDER * * *

RELEASING OFFICER CHECK ALL ITEMS LISTED ABOVE TO CHECK FOR DAMAGED
ITEMS UPON RELEASING INMATE.  ALL NON-EXPENDABLE ITEMS WILL BE CHARGED
THE FOLLOWING PRICE FOR THE ITEM.

LAUNDRY BAG:      $  8.00
DRINGKING CUP:    $  2.00
SHEETS:           $  8.00  EACH
BLANKETS:         $ 10.00
BATH TOWEL:       $  5.00
FACE TOWEL:       $  2.00
UNIFORM:          $ 25.00  EACH
HANDBOOK:         $  4.00

DAMAGE TO OR DEFACING OF THE CELL OR THE FIXTURES ARE PRICED AT THE
DISCRETION OF THE JAIL ADMINISTRATOR.

* *  CIRCLE THE APPROPRIATE ITEM THAT ARE LOST/DAMAGED AND SUBMIT  * *
* *  A COPY TO THE JAIL ADMINISTRATOR BEFORE A CHECK IS WRITTEN    * *
* *                 TO THE RELEASEE.                               * *

SCENARIO #1:  RELEASEE HAS MONEY IN ACCOUNT TO COVER THE COST.  COST OF
              THE ITEMS WILL BE DEDUCTED BEFORE A CHECK IS WRITTEN.

SCENARIO #2:  RELEASEE DOES NOT HAVE ENOUGH MONEY IN ACCOUNT TO COVER
              THE COST.  RELEASEE RECEIVES NO CHECK AND HAS 5 WORKING
              DAYS TO PAY BALANCE.  IF NOT PAID A WARRANT WILL BE
              ISSUED.

SCENARIO #3:  RELEASEE HAS NO MONEY IN ACCOUNT.  RELEASSEE HAS 5 WORKING
              DAYS TO PAY COST.  IF NOT PAID A WARRANT WILL BE ISSUED.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| EDWARD PATTEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:06-cv-864-WKW-CSC |
| | ) |
| BILL FRANKLIN, et al., | ) |
| | ) |
|     Defendants. | ) |

**AFFIDAVIT OF JAMIE CHURCH**

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF ELMORE | ) |

    **BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Sergeant Jamie Church, who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Jamie Church. I am over the age of nineteen (19) years and competent to make this affidavit.

    2.    I am employed as a Corrections Officer at the Elmore County, Alabama Jail and have attained the rank of Sergeant.

    3.    I have been employed at the Elmore County Jail since July 26, 2002.

    4.    I am familiar with Edward Patten due to his incarceration at the Elmore County Jail.

    5.    I did not refuse or otherwise deny Mr. Patten's request to be transferred to a safer location.

    6.    I did not tell or suggest to Mr. Patten that he must become a "snitch" and/or help me find a "shank" as a condition of being transferred to a pod other than Pod 5.

6.    Mr. Patten was moved from Pod 5 to Pod 8 because he stated that he was having problems with inmates in Pod 5.

7.    Myself and another Elmore County Jail Corrections Officer escorted Mr. Patten from Pod 5 to Pod 8.

8.    At no time during his confinement in Pod 8 did Mr. Patten state to me that he felt threatened or at risk of harm in that pod.

9.    I have never denied necessary medical attention to Mr. Patten.

10.    I did not violate or cause to be violated any right to which Mr. Patten was entitled.

11.    I have not authorized or allowed anyone to act contrary to the Elmore County Jail Manual of Policies and Procedures or to violate the rights of any Elmore County Jail inmate, nor am I aware of any such violation.

12.    I swear, to the best of my present knowledge, information, and belief, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

_____
JAMIE CHURCH


SWORN TO AND SUBSCRIBED before me on this the _____ day of November, 2006.


_____
NOTARY PUBLIC

My Commission Expires: _____

2

# EXHIBIT C

*Please see*

# ECH Elmore Community Hospital

*Federal BOP*
*Attn: CC manager*
*Gunter Annex Bldg 834*
*105 S. Turner Blvd   Monty, AL*
*36114*

## ELMORE COUNTY HEALTH CARE AUTHORITY

### OUTPATIENT TESTS PROCEDURES

Patients may report between 7:00 a.m. to 4:30 p.m., during the week for outpatient tests except ultrasounds and tests in the Radiology, Respiratory Therapy and Surgery departments that require pre-scheduling.

All patients for Ultrasound and pre-scheduled test should report at their scheduled time and date.

Patient Name  *Patten        Edward*
            Last          First        Middle

Patient Telephone Number_____

Date: *8/24/06*                Time: *1700*

Test/Procedure Requested: *ER Dr to evaluate + treat per BOP CC (See attached)*

Diagnosis/Reason Related to Test and/or Procedure:_____

*Inmate States he was raped by another inmate. States he was inappropriately touched + made to do things he didn't want to do. by Inmate Johnny Newman (usm). States this happened Fri 8/18/06 + Mr. Patten was scared to repor, this.*

Requesting Physicians Signature: *Singleton*

500 Hospital Drive ● P. O. Box 120
Wetumpka, AL 36092
Telephone: 205-567-4311 ● Fax: 205-567-5919

BO77



Bill:
Katina 213-0431
CC manager
Fed BOP Bldg 834
Gunter Annex Blvd
105 S. Turner Blvd
Mtg. AL 3ull4

Edward Patten — Inmate

277 1764

Ray Toston — BOP

cell 207-2656

ELMORE COMMUNITY          P O BOX 130                    WETUMPKA        AL 36

**EMERGENCY ROOM • OUTPATIENT REC**

| PATIENT NUMBER | TYPE | PATIENT NAME | | AGE | BIRTHDATE | | SEX | M/S | DATE OF SERVICE | TIME | CLERK INIT. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 342075 | 3 | PATTON EDWARD | | 29 | 9/26/1976 | | M | SB | 8/24/06 | 17:53 | SP |

| ADDRESS - LINE 1 | ADDRESS - LINE 2 | | CITY | | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|---|
| ECJ | 8955 US HWY 231 N | | WETUMPKA | | AL | 36093 | 334-567-1 |

| PATIENT SSAN | NOTIFY IN CASE OF EMERGENCY - NAME | RELATIONSHIP | ADDRESS | TELEPHONE |
|---|---|---|---|---|
| 418026013 | INMATE | | | |

| INSURANCE COMPANY | CONTRACT OR GROUP NUMBER | DATE | PLACE |
|---|---|---|---|
| | | TIME | EVENT |

| GUARANTOR NAME | GUARANTOR ADDRESS | CITY | STATE | ZIP CODE | GUAR. TELEPHONE |
|---|---|---|---|---|---|
| FEDERAL BOP | GUNTER ANNEX BLDG 83 | MONTGOMERY | AL | 36114 | 567-1156 |

| GUARANTOR EMPLOYER | GUARANTOR OCCUPATION | GUAR. EMPLOYER ADDRESS | GUAR. EMP. TELEPHONE |
|---|---|---|---|
| INMATE | | | |

| PREV. SERVICE | PREV. SERV. DATE | IF MINOR - PARENT NAME | MED. REC. # | FAMILY PHYSICIAN |
|---|---|---|---|---|
| | | | 056947 | SWEENEY G / |

| CHARGES | X-RAY | LAB | RESP. TH. | PHY. TH. | EKG. | I.V. | DRUGS | SUPPLIES | OTHER | M.D. | E.R. RM | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

AUTHORIZATION FOR TREATMENT, GUARANTEE OF PAYMENT, ASSIGNMENT OF INSURANCE BENEFITS

1. The undersigned has been informed of the emergency treatment considered necessary for the above named patient, and that treatment and procedures will be performed by physicians, members of house staff employees of the hospital. Authorization is hereby granted for such treatment and procedures. The undersigned has read the above authorization and understands the same and certifies that no guarantee or assuran has been made as to the results that may be obtained.
2. The undersigned agrees to pay for services rendered by Hospital upon release of patient.
3. I/we hereby assign any hospital benefits, sick benefits, injury benefits due to a liability of a Third party, payable by any party, for the above patient, to Hospital unless I pay the account in full upon release of pati appoint the "Controller" of Hospital as my lawful attorney to endorse for me any checks made payable to me for benefits or claims collected under the above assignment and to apply any credit balance to any oth account I may owe said hospital.

| DATE | TIME | SIGNED PATIENT | SIGNED GUARANTOR |
|---|---|---|---|

**CHIEF COMPLAINT (If Accident State How, When, and Where)**

| TEMP. | PULSE | RESP. | B/P | ALLERGIES | MEDICATIONS - HOME | E.R. PHYSICIAN | TET. TO |
|---|---|---|---|---|---|---|---|

**NURSES NOTES:**

# CODED

NURSE'S SIGNATURE (RN OR L

**LAB DATA (Including X-Rays, EKGs, etc.)**

523.1

523.8

**PHYSICIAN'S REPORT:**

# DIAGNOSIS:

**TREATMENT:**

| | CONDITION ON DISC | | |
|---|---|---|---|
| | IMP | STABLE | EXPIR |

**INSTRUCTIONS TO PATIENT:**

FOLLOW-UP WITH

FORM 8450

| PATIENT'S SIGNATURE ON DISCHARGE | DATE - TIME OF DISC. | PHYSICIAN'S SIGNATURE |
|---|---|---|
| BY SIGNING HERE I CERTIFY THAT I UNDERSTAND THE FOLLOW-UP | MEDICAL RECORDS | |

# EMERGENCY ROOM RECORD
ELMORE COMMUNITY HOSPITAL
WETUMPKA, ALABAMA

PATIENT NAME: Edward Patten

| P A T I E N T | INFORMATION |
|---|---|
| Patient Medic | 342075 E/R    E    08-24-06    29 |
| Adm. | M  S  RM#    17:53  PRIVATE |
| Adm. | PATTON EDWARD    09-26-1976 |
| | SWEENEY 6 |
| Family | 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    MR# 056947 |

Physician: _____

TRIAGE:  Date: 8/24/06    Time: 1755
Ambulance _____ POV _____ Other ✓
Allergies NKA
Last Tetanus: about 10 mos.    L.M.P. N/A
Weight: 138
Present Medications: Dental daily

Class 1–Emergent _____
Class 2—Urgent _____
Class 3—Non-Urgent _____

M Falkner RN
(Signature)

CHIEF COMPLAINT/Initial Assessment
I have been tampered with "dude held me down and went in my behind"

LEVEL OF CONSCIOUSNESS:   Altered Mental Status
Comatose  Semicomatose  Drowsy   Alert
GENERAL APPEARANCE: (Physical Findings, Symptoms)

| SKIN (W & D) | PAIN | RESP. | BLEEDING |
|---|---|---|---|
| Diaphoretic | None | Normal | None not turn |
| Cool & Clammy | Minimal | Dyspnea | Minimal |
| Cyanotic | Moderate | Apnea | Moderate |
| Pale | Severe | Tachypnea | Profuse |
| Flushed | Radiating | | |
| Jaundiced | Non-radiating | | |

| Time | Temp | P | R | B/P | SAO2 |
|---|---|---|---|---|---|
| TRIAGE | 98.3 | 91 | 20 | 115/56 | 96% |

NURSING NOTES: 1810 = pt amb. c correctional officer to rm for MSE
By Dr Sweeney / MF
1835 pt to X-Ray - M
1855 DC instructions given pt & given voiced understanding

| Nursing Medications | IV's | Route | Time | Initial | CONSULTS/PHYSICIANS/OTHERS | Time Called | Retu C |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | Police: City/County/State | | | |
| | | | | Coroner/Mental Health | | | |

DISPOSITION:  Home ✓  AMA ___  ADM. ___  Trans. ___  Died ___  DOA ___
Transfer Destination  back to jail
NURSE'S SIGNATURE: _____ RN    DISCHARGE TIME 1855    DATE 8-24-0

ECH-ER18-PR    5-20-99

T-System, Inc. Circle or check affirmatives, backslash (\) negatives.

342075 E/R    E    08-24-06    29
M    S    RN#         17:53    PRIVATE
PATTON EDWARD              09-26-1978
SWEENEY G
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    MR# 056947

**Elmore Community Hospital**
**EMERGENCY PHYSICIAN RECORD**
Alleged Assault    (5)

TIME SEEN: 18:10  ROOM: 5 _____ EMS arrival
HISTORIAN: _patient _spouse _paramedics_____
_HX / _EXAM LIMITED BY: _____

☑ Nurses note reviewed  ☐ Tetanus immun. UTD  ☑ Vital signs reviewed
**PHYSICAL EXAM** ☑Alert _Lethargic _Anxious_____
Distress- ☑NAD _mild _moderate _severe
Other- __c-collar ( PTA / in ED ) __back-board _IV __splint

| HPI. chief complaint: | injury to: anus |

**occurred:**
_just PTA
_today
_yesterday
_____ days PTA
8/18

**where:**
_home         _school
_neighbor's   _city park
_work          _street
jail

**context:** _fists _kicked _choking
_pushed/thrown down  _pushed/thrown against wall
_struck with object(s):
"claims to have been
raped anally last
friday. Throwing up blood
since then"

**location of pain/injuries:**

| | –right– | | –left– | |
|---|---|---|---|---|
| head  face  mouth | shldr | hip | shldr | hip |
| neck  chest  abdomen | arm | thigh | arm | thigh |
| | elbow | knee | elbow | knee |
| back  upper mid- lower | f-arm | leg | f-arm | leg |
| radiating to R / L thigh / leg | wrist | ankle | wrist | ankle |
| | hand | foot | hand | foot |

**severity of pain:**
mild
(moderate)
severe

**associated symptoms:**
_lost consciousness / dazed
    duration: _____
    remembers:
       impact    coming to hospital
    _seizure

**ROS** (all systems neg except as marked)
↑ loss feeling/power arms/legs
_headache _____
_double vision / hearing loss__

_trouble breathing / chest pain
_nausea / vomiting
_loss of bladder function
_skin laceration
_recent fever / illness

**SOCIAL HISTORY** _recent ETOH _smoker _drug abuse.

**PAST HISTORY** _negative
PUD

Meds- _none / ☑ see nurses note _____
Allergies- ☑ NKDA / _ see nurses note _____

**HEAD**
☑ no evidence of trauma
__see diagram
__Battle's sign / Raccoon Eyes_____

**NECK**
_non-tender
☑ painless ROM
☑ trachea midline
__see diagram
__vertebral point-tenderness
__muscle spasm / decreased ROM
__pain on movement of neck



**EYES**
☑ PERRL
☑ EOMI
__unequal pupils  R-___mm  L-___mm
__EOM entrapment / palsy_____
__subconjunctival hemorrhage_____

**ENT**
☑ nml external inspection
_no dental injury
__hemotympanum
__TM obscured by wax
__clotted nasal blood
__dental injury / malocclusion
min blood around ® pre-
molar

**RESP & CVS**
☑ chest non-tender
☑ breath sounds nml
☑ heart sounds nml
__see diagram ( on reverse )
__decreased breath sounds
__wheezing / rales
__splinting / paradoxical movements

**ABDOMEN**
☑ non-tender
☑ no organomegaly
__see diagram ( on reverse )
__tenderness / guarding / rebound
__mass / organomegaly

**GENITAL / RECTAL**
_nml genital exam
_nml vaginal exam
☑ nml rectal exam
☑ heme negative stool
__perineal hematoma
__blood at urethral meatus
__decreased rectal tone
_heme negative

**NEURO / PSYCH**
☑ oriented x3
☑ mood & affect
☑ CN'S nml
    as tested
_sensation &
    motor nml
__confusion / disorientation
__EOM palsy / anisocoria
__facial asymmetry
__unsteady / ataxic gait
__sensory / motor deficit


Reflexes

__intact
__warm, dry
**BACK**
__no CVA
  tenderness
__no vertebral
  tenderness

**EXTREMITIES**
__atraumatic
__pelvis stable
__hips non-tender
__no pedal edema
__nml ROM

__see diagram
__crepitus / diaphoresis

__see diagram
__vertebral point-tenderness
__CVA tenderness
__muscle spasm / limited ROM

__see diagram
__bony point-tenderness
__painful / unable to bear weight
__pulse deficit

*Joint Exam:*
__limited ROM / ligaments laxity / joint effusion

L    R    L    R

T=Tenderness
PtT=Point Tenderness
S=Swelling
E=Ecchymosis
Lac=Laceration
A=Abrasion B=Burn
(∅=without m=mild
mod=moderate
sv=severe)
Tsv = Tenderness on
palpation (severe)

**PROGRESS:**

**XRAYS** ☐ Interp. by me   ☐ Reviewed by me   ☐ Discsd w/radiologist

**C-Spine   D-Spine   LS-Spine**
__nml / NAD
__no fracture
__nml alignment
__soft tissues nml

__reversal / straightening of cerv. lordosis
__DJD / spondylosis / spurring

**CXR**
__nml / NAD
__no infiltrates
__nml heart size
__nml mediastinum

__rib fracture
__infiltrate / atelectasis

**OTHER** ☐ See separate report
*Abdominal series    negative*

__Discussed with Dr.
__will see patient in: office / ED / hospital
__Counseled patient / family regarding:
   lab results   diagnosis   need for follow-up
__Rx given   Admit orders written

CRIT CARE 30-74 min
75-104 min
__Prior records ordered
__Additional history from
*family / caretaker / paramedics*

**CLINICAL IMPRESSION:**   *Alleged Assault*

| contusion | | | sprain / strain |
|---|---|---|---|
| head | wrist | R / L | neck dorsal lumbar |
| face | hand | R / L | |
| chest | hip | R / L | |
| abdomen | thigh | R / L | **concussion** |
| back | knee | R / L | with LOC   w/o LOC |
| shoulder R / L | leg | R / L | |
| arm | ankle | R / L | |
| elbow R / L | foot | R / L | **laceration** |
| forearm R / L | | | |

*minimal gum bleeding/
gingivitis*

**Wound Description/Repair**
length _____ cm   location _____
__superficial __SQ __muscle __linear __stellate __irregular
__clean __contaminated *moderately / *heavily*
distal NVT: __neuro & vascular status intact __no tendon injury
anesthesia: __local __digital block _____ cc
__lidoc .1% 2% .epi / bicarb __marcaine .25% .5% __LET
prep:
__Betadine / Shur-Clens    __debrided / undermined
__irrigated / washed w/saline    *extensively
   *extensively    __foreign material removed
__explored    minimal moderate extensive
repair: Wound closed with: wound adhesive / steri-strips
   *SKIN- __ # _____ -0 .nylon / prolene / staples
   *SUBCU- # _____ -0 .vicryl / chromic
*may indicate intermediate repair   *may indicate intermediate or complex repair

**DISPOSITION-** ☑ home ☐ admitted ☐ transferred
**CONDITION-** ☐ unchanged ☐ improved ☑ stable

MD /RN

**ELMORE COMMUNITY HOSPITAL EMERGENCY DEPARTMENT**

RS: _____
SS: _____

342075 E/R   E   08-24-06   29
M  S  RM#      17:53  PRIVATE
PATTON EDWARD           09-26-1976
SWEENEY G
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    MR# 056947      1955

X-RAYS: _Abd Series_

MEDICINES / IV / OTHER: _____

PHYSICIAN SIGNATURE _____

**ELMORE COMMUNITY HOSPITAL   P.O. BOX 130  WETUMPKA, AL 36092   (334) 567-4311**

PATIENT'S NAME: _____        DATE: _____

| MEDICATION | DIRECTIONS | DISPENSE | REFILLS |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

_____, M.D.        _____, M.D.
PRODUCT SELECTION PERMITTED          DISPENSE AS WRITTEN
DEA# _____  ACLS# _____          NO REFILL AFTER SIX MONTHS

**ELMORE COMMUNITY HOSPITAL EMERGENCY DEPARTMENT**

**DISCHARGE INSTRUCTIONS**       PATIENT'S NAME: Edward Patton

____ Contact your physician tomorrow for an appointment for follow-up in ____ days.   DATE: 8 24 06
____ If no improvement in ____ days, contact your physician for follow-up.
____ Continue with present medications.
____ Contact your physician or return to the Emergency Department if symptoms worsen or no relief prior to follow-up appointment.
____ Since you have no local physician, you have been referred to Dr _____ phone number ____
____ Take medications as directed.
✓ Additional Instruction:
  Milk of magnesia or mineral oil as needed
  for constipation

**WORK / SCHOOL NOTE**
____ May return to work / school without restrictions.
____ May return to restricted duties for ____ days.
    Restrictions: _____
____ Will require time off from work / school, estimated time: ____ days.
____ Other: _____

____ No athletics / physical education: ____ days.

I hereby acknowledge that I have received a copy of and understand the above instructions.

X Edward Patton
Signature of Patient or Responsible Party

_____
Signature of Nursing Personnel

was here with relative / child:        FORM NO. ER 0001

# EXHIBIT D

**ELMORE COUNTY JAIL**
**PROGRESS/NURSE'S NOTES**

NAME: PATTEN, Edward                    9/26/76

| DATE | TIME | TREATMENT/PROCEDURES |
|------|------|----------------------|
| 8/19/06 | 2:00p | To 5 POD, IM C/o "throwing up blood" upon Entering IM's cell, saw minimal amount red substance on floor mixed c̄ H₂O. IM Patten states he has a bleeding ulcer and he "can take the heat" skin, warm & dry to touch, normal tone & turgor. B/P 131/79, P91, R20, Breath sounds clear bilaterally. SaO₂ 97% room air. IM now states he has not eaten x3 days, however he takes his tray @ every meal. I asked IM if he wanted to tell me what the real problem was. He declined, I instructed IM Patten to call medical should he experience any more symptoms — RN |
| | 5:45p | Saw IM cell front. He requested be moved to "the fed pod" stated he would feel more comfortable around other feds. When asked how he was feeling, he stated, "I'm okay." |
| | 5:55p | Po Church requested that I get IM Patten out of 5 POD and bring him to them so they may speak in private. — |

# EXHIBIT E

**ELMORE COUNTY JAIL INMATE REQUEST FORM**

NAME (PRINT) _Edward Ritter_     CELL _Pod 5_     DATE _8-21-06_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFICER.

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.   IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.   IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUEST
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQUESTS
WILL BE DISCARDED.

INMATE REQUEST: _I'm having Trouble breatheing, I'm feeling_
_Weak I feel as though am want to fall out_
_I need Too see the Nurse as soon as I can_
_Thank you very much:_

**DO NOT WRITE BELOW THIS LINE           DO NOT WRITE ON BACK OF THIS FORM**

REPLY: _8/22/06  CBBS. 02 98%,  NO S/S of_
_distress @ this time.                          SJ_

JAIL ADMINISTRATOR OR DESIGNEE ___Bonner___   DATE ___8LL___

FORWARDED TO:
( ) INMATE              ( ) TRUSTY OFF              ( ) PHYSICIAN
( ) INMATE FILE         ( ) EXP/SUPP OFF _____   ( ) NURSE
( ) SHERIFF             ( ) NOTARY OFF _____     ( ) MED OFF
( ) WARDEN              ( ) PX OFF                 ( ) CHAPLAIN
( ) LT                  ( ) MAINT OFF _____      ( ) STEWARD
( ) SGT _____         ( ) PROGRAMS OFF           ( ) OTHER _____
( ) SPV _____
( ) CO  _____         ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
                        WRITE THE DISPOSITION IN THE REPLY SECTION AND
                        RETURN FORM TO JAIL ADMINISTRATOR.

# EXHIBIT F

# MEDICATION ADMINISTRATION RECORD

STDT01

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROTONIX 40MG—1 TABLET PO QD | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

8/18/06

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NURSE'S ORDERS, MEDICATION NOTES, AND INSTRUCTIONS ON REVERSE SIDE

CHARTING FOR Aug-06    THROUGH

| Physician | Dr. Mendez | Telephone No. | | Medical Record No. |
|---|---|---|---|---|
| Alt. Physician | | Alt. Telephone | | |
| Allergies | NKA | Rehabilitative Potential | | |

Diagnosis

| Medicaid Number | Medicare Number | Complete Entries in CAPS By | | | Title | | Date |
|---|---|---|---|---|---|---|---|

| PATIENT | | | PATIENT CODE | ROOM NO. | BED | FACILITY CODE |
|---|---|---|---|---|---|---|
| PATTEN, EDWARD | | | | | | |

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDWARD PATTEN,                      )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    CIVIL ACTION NO. 2:06-cv-864-WKW-CSC
                                    )
BILL FRANKLIN, et al.,              )
                                    )
        Defendants.                 )

### AFFIDAVIT OF BILL FRANKLIN

STATE OF ALABAMA        )
                        )
COUNTY OF ELMORE        )

. BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Sheriff Bill Franklin, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Bill Franklin. I am over the age of nineteen (19) years and competent to make this affidavit.

2.     I am the Sheriff of Elmore County, Alabama.

3.     I have no personal knowledge of any of the facts stated in the Complaint. I was not present, nor did I have any direct contact with the Plaintiff during the time when Plaintiff alleges his civil rights were violated.

4.     All state and federal prisoners or detainees being held or housed in the Elmore County Jail will be subject to the rules and regulations of the Elmore County Jail.

5.      It is the policy of the Elmore County Sheriff's Department that the Elmore County Jail be operated in a manner which provides for community safety, facility security, and the welfare of the jail staff and inmates.

6.      It is the policy of the Elmore County Sheriff's Department that no person be incarcerated in a situation within the Elmore County Jail where his life or health may be threatened by another inmate when, by making the situation known to members of the jail staff, he can be incarcerated elsewhere. All persons being booked into the Elmore County Jail will be given the opportunity to complete an "enemies list." The booking officer will give the arrestee or detainee an opportunity to make known in writing any person within the jail whom he fears or has reason to believe is a threat to him in any way. If the inmate states that there is an inmate or inmates who would do him harm, jail personnel will list the inmate or inmates on the enemies form stating the reason the new inmate feels he is in danger. If the new inmate states that he has no knowledge of any other inmate who would cause him harm, the booking officer will note this fact on the booking sheet by checking the appropriate space. Upon completion of the enemies list, the inmate will be asked to sign the form and it will then be placed in the inmate's jail file.

7.      It is the policy of the Elmore County Sheriff's Department that inmates incarcerated in the Elmore County Jail be assigned cells in a manner which will ensure the safety and security of the inmates and jail staff and will ensure the orderly operation of the Elmore County Jail. The assignment of an inmate to a particular cell or any change in cell assignment is the responsibility of jail officials only. The primary objective of the jail staff with regard to cell assignment will be inmate safety. When it is apparent or seems likely that two inmates represent a potential threat to each other or will not be able to exist together in the same living area without potential conflict, those inmates shall be separated.

2

8.    It is the policy of the Elmore County Sheriff's Department to classify inmates in specific custody levels in order to provide for their welfare and facility security. An inmate's classification status shall be reviewed regularly and changed as necessary. Inmates classified as general population are those who are capable of functioning in larger groups and are not considered security risks. Segregation inmates include those classified as administrative segregation, protective custody, and special needs. Protective custody inmates are housed in segregation only when there is documentation that protective custody is warranted and no alternative exists.

9.    It is the policy of the Elmore County Sheriff's Department that Sheriff's Department personnel employed at the Elmore County Jail be aware of and protect inmate rights, both civil and legal. These rights include: (a) freedom from discrimination based on race, religion, national origin, sex, handicap or political beliefs; (b) equal access to programs and work assignments; (c) protection from personal abuse, corporal punishment, personal injury, disease, property damage and harassment; and, (d) freedom from reprisals or penalties as a result of seeking administrative or judicial redress. All employees having direct contact with inmates must treat them respectfully and courteously. All inmates shall have equal access to programs, activities and work assignments.

10.    It is the policy of the Elmore County Sheriff's Department that members of the Elmore County Jail staff conduct themselves in a manner so as to ensure that inmates are dealt with in a constitutional, honest, fair and impartial manner.

11.    Inmates housed in the Elmore County Jail will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing. Forms on which grievances and medical requests may be related to the jail staff are readily available in the jail.

3

Inmates are furnished these forms any time they request one. Jail personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. An exception exists for requests of an emergency nature, which may be made orally. Inmates are generally encouraged to resolve grievances between themselves and members of the jail staff informally. If this is not possible, the inmate may complete a request form, stating his grievance. The original copy of an inmate's grievance and/or request form, containing the response of a jail official(s), is placed in an inmate's jail file.

12.     Inmates are made aware of the grievance procedure and the medical request procedure by receipt of an inmate handbook at the time they are booked. This handbook describes not only the grievance process, but the general operation and rules of the jail.

13.     It is the policy of the Elmore County Sheriff's Department that members of the jail staff receive and answer any written grievances or requests made by inmates to the Sheriff, Jail Administrator or jail personnel.

14.     It is the policy of the Elmore County Sheriff's Department that all inmates confined in the Elmore County Jail be entitled to a level of health care comparable to that available to citizens in the surrounding community in order to ensure the inmate's physical and emotional well-being. All medical care rendered to inmates in the Elmore County Jail is delivered under the direction of a licensed physician. No health care personnel or jail officer, or other employee of the Sheriff's Department, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist, or qualified psychologist, respectively. Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

4

15.    It is the policy of the Elmore County Sheriff's Department that inmates incarcerated in the Elmore County Jail may request health care services at any time. Inmates may either make a verbal request to any member of the jail staff for emergency attention, or make a written request for any non-emergency situation. Requests for medical treatment are accepted by members of the jail staff at all times.

16.    It is the policy of the Elmore County Sheriff's Department to transport an inmate to appropriate medical facilities for non-emergency care in a manner which is safe and secure and does not endanger the inmate's health or medical condition.

17.    It is the policy of the Elmore County Sheriff's Department to work closely with the private health care providers of inmates incarcerated in the Elmore County Jail where possible.

18.    It is the policy of the Elmore County Sheriff's Department that persons incarcerated in the Elmore County Jail be entitled to safe dispensation and administration of prescription and nonprescription medication. All medication which is prescribed for an inmate by his health care provider during the term of the inmate's incarceration is obtained by the Sheriff's Department and distributed to the inmate according to the doctor's directions. I have never promulgated or authorized a policy which would deny inmates medical care or treatment, nor have I allowed any corrections officer to do so.

19.    During Mr. Patten's incarceration at the Elmore County Jail, I was not aware, nor did anyone inform me, that Mr. Patten asked to be moved to a different area of the jail.

20.    During Mr. Patten's incarceration at the Elmore County Jail, I was not aware, nor did anyone inform me, of Mr. Patten's request for medical care. I did not participate in any decision related to Mr. Patten's request for medical care.

5

21.    I did not violate or cause to be violated any right to which Mr. Patten was entitled.

22.    I have not authorized or allowed anyone to act contrary to the Elmore County Jail Manual of Policies and Procedures or to violate the rights of any Elmore County Jail inmate, nor am I aware of any such violation.

23.    I certify and state that the documents provided to the Court which are attached to the Defendants' Motion for Summary Judgment are true and correct copies of inmate records, kept at the Elmore County Jail in the regular course of business.

24.    I swear, to the best of my present knowledge, information, and belief, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

BILL FRANKLIN

SWORN TO AND SUBSCRIBED before me on this the 6th day of November, 2006.

NOTARY PUBLIC

My Commission Expires: 3-2-10

6

# EXHIBIT H

```
                         ELMORE COUNTY SHERIFF'S OFFICE
08/18/2006    13:03:45          INMATE BOOKING SHEET                  PAGE    1
================================================================================
BOOKING NO: 060003008


INMATE NAME: PATTEN EDWARD JEROME
       ALIAS:                                    RACE: B      SEX: M
       ALIAS:                                    HT: 5'06" HAIR: BLK
     ADDRESS: 3827 RIVERA RD                      WT: 130   EYES: BRO
 CITY/ST/ZIP: MONTGOMERY, AL 36108         COMPLEX:
 HOME PHONE: 000-000-0000                         SSN: 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
        DOB: 09/26/1976  AGE:   29               DL ST:         DLN:
 PLCE BIRTH: CHAMBERS CITY                       SID:
       STATE: AL                           LOCID: 19000
   M. STATUS: MARRIED
    RELIGION: CHRISTIAN
 GANG ASSOC: NONE
SCARS/TATTOOS: WIFE NAME AND DAUGHTERS NAME ON HAND
KNOWN ENEMIES:
     REMARKS:
-------------------------------- NEXT OF KIN ----------------------------------
  NEXT OF KIN: SARA PATTEN                  RELATIONSHIP: WIFE
     ADDRESS: SAME                                 PHONE: 334-288-9903
 CITY/ST/ZIP: SAME,
     REMARKS:
-------------------------------- EMPLOYER INFO --------------------------------
    EMPLOYED:
EMPLOYER NAME:
     ADDRESS:
 CITY/ST/ZIP: ,
       PHONE: 000-000-0000
-------------------------------- MEDICAL --------------------------------------
  HANDICAPPED: N  NEEDS: NONE
     GLASSES: N  SMOKE: N
MEDICAL NEEDS: O  NEEDS:
   PHYSICIAN: NONE                     PHONE: 000-000-0000
     REMARKS: NONE


     REMARKS:
     REMARKS:
-------------------------------- PROPERTY -------------------------------------
        CASH:      $00.00
 DESCRIPTION:
ADD. PROPERTY: 2SHIRTS,PANTS,SHOES,
ADD. PROPERTY:
ADD. PROPERTY:
  BIN NUMBER:
VEH IMPOUNDED: N
 IMPOUND LOT:
     REMARKS:
     REMARKS:
================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.
```

INMATE: _Edward Patten_          DATE: _8/18/02_     TIME: _13:07_

BOOK OFFICER: _Minardi_          DATE _8/18/02_     TIME: _13:07_

```
                         ELMORE COUNTY SHERIFF'S OFFICE
08/18/2006      13:03:45        INMATE BOOKING SHEET                    PAGE      2
==================================================================================
BOOKING NO: 060003008       INMATE NAME: PATTEN EDWARD JEROME
==================================================================================
           COURT:                        ATTORNEY ON REC:
           JUDGE:                              PHONE: 000-000-0000
         REMARKS:
         REMARKS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
      BOOK DATE: 08/18/2006   BOOK TIME: 12:59   BOOK TYPE: NORMAL
```

```
    ARREST DATE: 08/18/2006              BOOKING OFFICER: MINARDI
     ARREST DEPT: BOP               CELL ASSIGNMENT:
   ARRST OFFICER: HOKER                   MEAL CODE: 03    FEDERAL BOP
   PROJ. RLSDATE: 00/00/0000               FACILITY: 01    COUNTY JAIL
   SEARCH OFFCR: JEWELL              CLASSIFICATION:
    TYPE SEARCH: FULL                 WORK RELEASE: N
  INTOX RESULTS:

           HOLDS: N
          AGENCY:                   REASON:
          AGENCY:                   REASON:
          AGENCY:                   REASON:
          AGENCY:                   REASON:

           NOTES:
           NOTES:
           NOTES:
```

```
                        ELMORE COUNTY SHERIFF'S OFFICE
08/18/2006     13:03:45          INMATE CHARGE SHEET                    PAGE    3
================================================================================
BOOKING NO: 060003008     INMATE NAME: PATTEN EDWARD JEROME
================================================================================
    CHARGE NO:  1  DISPOSITION: OPEN               HOLD: N

ALA STATUTE:                          # OF COUNTS:    0
    OFFENSE: HOLD FOR FEDS               WARRANT #:
     CASE #:
    BOND AMT: NONE                              FINE:        $0.00
    BAIL AMT:
  INIT APPEAR: 00/00/0000            SENTENCE DATE: 00/00/0000
  RELEASE DTE: 00/00/0000
  ARREST DATE: 08/18/2006             ARST AGENCY: BOP
  ARST OFFICR: HOKER                       COUNTY: 29
       COURT:                               JUDGE:
  DEF ATTORNY:                        DIST ATTORNEY:
     COMMENTS:
     COMMENTS:
     COMMENTS:
--------------------------------------------------------------------------------
```

ELMORE COUNTY SHERIFF'S OFFICE
08/18/2006    13:03:45    MEDICAL SCREENING FORM                    PAGE 1
============================================================================
Booking No: 060003008  Date: 08/18/2006  Time: 12:59  Type: NORMAL
Agency to Bill: FEDERAL BOP              Facility: COUNTY JAIL

Inmate Name: PATTEN EDWARD JEROME              Race: B        Sex: M
     DOB: 09/26/1976 Age:  29  SSN: 428 42 6013  Height: 5'06"  Weight: 130
----------------------------------------------------------------------------

1. Is inmate unconscious?

2. Does inmate have any visible signs of trauma, illness, obvious pain and bleeding, requiring immediate emergency or doctor's care?

3. Is there obvious fever, swollen lymph nodes, jaundice or other evidence of infection that might spread through the facility?

4. Any signs of poor skin condition, vermin, rashes or needle marks?

5. Does inmate appear to be under the influence of drugs or alcohol?

6. Any visible signs of alcohol or drug withdrawal?

7. Does inmate's behavior suggest the risk of suicide or assault?

8. Is inmate carrying any medication?

9. Does the inmate have any physical deformities?

10. Does inmate appear to have psychiatric problems?

11. Do you have or have you ever had or has anyone in your family ever had any of the following?

a. Allergies          f. Fainting Spells          k. Seizures

b. Arthritis          g. Hearing Condition        l. Tuberculosis

c. Asthma             h. Hepatitis                m. Ulcers

d. Diabetes           i. High Blood Pressure      n. Venereal Disease

e. Epilepsy           j. Psychiatric Disorder     o. Other (Specify)

Other: _____

_____

_____

12. For females only:

_____ a. Are you pregnant?

_____ b. Do you take birth control pills?

_____ c. Have you recently delivered?

ELMORE COUNTY SHERIFF'S OFFICE
08/18/2006    13:03:45    MEDICAL SCREENING FORM                    PAGE 2
=====================================================================
Booking No: 060003008  Date: 08/18/2006  Time: 12:59  Type: NORMAL
Agency to Bill: FEDERAL BOP             Facility: COUNTY JAIL

Inmate Name: PATTEN EDWARD JEROME              Race: B       Sex: M
      DOB: 09/26/1976 Age:  29  SSN: 428 42 6013  Height: 5'06"  Weight: 130
---------------------------------------------------------------------

13.  Have you recently been hospitalized or treated by a doctor?

14.  Do you currently take any non-prescription medication or medication
     prescribed by a doctor?

15.  Are you allergic to any medication?

16.  Do you have any handicaps or conditions that limit activity?

17.  Have you ever attempted suicide or are you thinking about it now?

18.  Do you regularly use alcohol or street drugs?

19.  Do you have any problems when you stop drinking or using drugs?

20.  Do you have a special diet prescribed by a physician?

21.  Do you have any problems or pain with your teeth?

22.  Do you have any other medical problems we should know about?

bleeding ulcer
(14) Zantac


I HAVE READ THE ABOVE ACCOUNTING OF MY MEDICAL ASSESSMENT AND I FIND IT TO BE
TRUE AND ACCURATE.

INMATE: Edward Patten          DATE: 8/18/06     TIME:

BOOK OFFICER: Minard,          DATE:             TIME: 13:03

U.S. Department of Justice
United States Marshals Service

PRISONER REMAND OR ORDER TO DELIVER AND
RECEIPT FOR UNITED STATES PRISONERS

UNITED STATES MARSHAL

DISTRICT OF _Alabama_

TO: _Elmore County Jail_

(Name & Title)

DATE: _8/8/06_

THE FOLLOWING NAMED UNITED STATES PRISONER(S):

☒ are herewith remanded to your custody

☐ are to be delivered to representative
presenting and signing this order

1 _Patrick Edward Boy_

2 _Sandoval, Greenis # Boy_

3

4

5

6

RECEIPT

THE ABOVE NAMED UNITED STATES PRISONER(S) WERE RECEIVED:

BY: _____

_Jesse Seroyer JR_
United States Marshal

TITLE: _Corrections Officer_

BY: _____
Deputy U.S. Marshal

DISTRICT OR ORGAN. ADDRESS _____

(PRIOR EDITIONS MAY BE USED)

Form USM-41
(REV. 11/83)
(Supersedes USM-40,
(Show Form))

# Arrest
# Record

NAME Edward Patter

ADDRESS 3827 Riviera Rd

DATE 2-13-06 COL B SEX M AGE 28

CHARGE _____ TIME _____

PLACE OF ARREST _____

EVIDENCE Hold for Bop

D.O.B. 9-26-76

EMPLOYER _____ CONDUCT _____

OFFICER Heller

## ENEMIES LIST

Inmate Name: **Edward Patten**                    Date: **08 / 18 / 06**

**LISTED BELOW ARE THE INMATES THAT THE ARRESTEE HAS REASON TO FEAR, WILL THREATEN HIS/HER PHYSICAL WELL-BEING. THE CELL ASSIGNMENT OF THAT INMATE AND THE CONTRIBUTING REASONS FOR CONCERN.**

Inmate:_____ Cell:_____

Reason:_____

Inmate:_____ Cell:_____

Reason:_____

Inmate:_____ Cell:_____

Reason:_____

Inmate:_____ Cell:_____

Reason:_____

Inmate:_____ Cell:_____

Reason:_____

(✗) **CHECK HERE IF NONE**

If the arrestee has enemies in the Elmore County Jail, the Shift Supervisor is directed to house the arrestee so that he/she will not come into contact with that enemy. The following shifts should be notified of the arrangement via the SHIFT PASS ON SHEETS IN BOOKING AND THE HOUSING TOWER.

## GENERAL INFORMATION

What is you religious preference?
(_) BAPTIST (_) CATHOLIC (_) METHODIST (_) CHURCH OF CHRIST (_) JEHOVAH WITNESS (_) EPISCOPAL (_) CHURCH OF GOD
(✗) OTHER: _Christian_____ (PLEASE SPECIFY)

Do you smoke? (_) YES (_) NO

Inmate Signature: _Edward Patten_____    Booking Officer: _Minard_.

## ELMORE COUNTY JAIL FEDERAL BOOKING CHECKLIST

__ IDENTIFY ARRESTING OFFICER ( Hoeker ____  AGENCY: BOP

__ SEARCH ARRESTEE. (BEFORE ARRESTEE GOES TO BATHROOM OR HOLDING CELL)

__ CHECK ARRESTEE FOR ILLNESS, INJURY OR INTOXICATION. ~~THOSE REQUIRI~~
~~MEDICAL ATTENTION ARE TO BE TRANSPORTED TO THE E.R. BY THE ARRESTI~~
OFFICER FOR EVALUATION AND TREATMENT BEFORE BOOKING AND INCARCERAT

__ COMPLETE MEDICAL INTAKE QUESTIONNAIRE.

__ ADD INMATE'S NAME TO THE FEDERAL BOOKS.

__ SHORT ARREST TICKET. WRITE FEDERAL IN EVIDENCE AREA.

__ COMMITMENT.

__ PHOTOGRAPHS // MISDEMEANOR DOUBLE EXPOSURE FRONTAL.

__ COMPLETE JAIL CARD AND UPDATE IF APPLICABLE.

__ ARRESTEE'S PROPERTY TO PROPERTY BAG.

__ ARRESTEE'S CLOTHING TO PROPERTY ROOM / DRESS OUT INMATE / COMPLETE
"STORAGE" SECTION OF PROPERTY BAG FOR CLOTHING.  LOG NAME AND LOCAT
CLIP BOARD AND PROPERTY ENVELOPE. PUT NAME TAG WITH CLOTHING.

__ COMPLETE PROPERTY ISSUE FORM.

__ INSURE ALL FORMS HAVE BEEN SIGNED BY THE APPROPRIATE PERSON.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

__ ADD ARRESTEE'S NAME TO BOARD AND CHANGE COUNT.

__ PLACE SHORT ARREST TICKET AND COMMITMENT IN BASKET.

__ PLACE MISDEMEANOR PHOTO IN INMATE FILE FOLDER.

__ PLACE JAIL CARD IN BOOK ACCORDING TO POD W/ ENEMY NOTE ATTACHED.

__ PLACE PROPERTY BAG IN SECURE CABINET LOCATED IN PROPERTY ROOM.

__ PLACE MEDICAL INTAKE, COPY OF COMMITMENT, PROPERTY ISSUE AND THIS FO
FILE FOLDER.  PLACE FILE FOLDER IN ACTIVE FILE.  NOTE: ENEMY INSIDE
OF FOLDER.

__ SECURE PROPERTY ROOM.

ARRESTEE'S NAME - Edward Patter ____  OFFICER'S NAME - Hoeker ____

DATE - 8/18/06 ____  TIME - 12:25 ____

## SHERIFF'S OFFICE, ELMORE COUNTY, ALABAMA

Name: Dotten

Last Name | First Name Edward | Middle Name Jerome | Alias

Residence: 3827 Rivieria Rd

Date of Birth: 8-26-76  Sex: M  Place of Birth: Chambers City, M

Color: B  Height: 5'06  Weight: 130  Hair: Blk

Eyes: Bro  Comp.  Build:  Nationality:

Driver's License Number:  Social Security Number: 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

Scars and Marks:

| DATE OF ARREST | COURT DATE | OFFENSE | BOND | AGENCY | DISPOSITION | TIME OUT | RELEASE DATE |
|---|---|---|---|---|---|---|---|
| 8-18-06 | | Hold for BOP | No | BOP | rel. to BOP's | 14:16 | 8-25-06 |

(Continuation Over)

## Voluntary Statement

**10/5/2006**

I Sgt.Church recall Imate Patten being incarcerated in jail.I also recall Inmate Patten being moved from five pod to eight pod due to him stating he was having problems with other inmates in five pod.Myself and Officer Mann moved him to eight pod with no further incident to the best of my knowledge.

Sgt.Church

*Sgt. Ch*

Sheriff Bill Franklin
Elmore County Sheriff's Department
2259 Hwy. 231
Wetumpka, AL 36092

NOTICE